United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re VERITAS SOFTWARE CORPORATION SECURITIES LITIGATION

This Document Relates to ALL ACTIONS /

Master File No. C-03-0283 MMC

**ORDER DENYING OBJECTOR'S MOTION FOR ATTORNEYS' FEES AND EXPENSES; VACATING HEARING**

(Docket No. 248)

Before the Court is the motion for attorneys' fees and expenses filed December 14, 2005 by class member Michael Malone ("Malone"). Lead plaintiffs have filed opposition to Malone's motion. Malone has filed a reply, and lead plaintiffs, with the Court's permission, have filed a surreply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, and hereby VACATES the February 10, 2006 hearing. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

On January 19, 2005, the parties notified the Court that they had reached a settlement of the instant securities fraud class action. On March 18, 2005, the Court granted preliminary approval of the settlement and ordered the parties to give notice of the settlement to the class members. The proposed settlement provided for distribution of

$35 million to persons who purchased or acquired Veritas common stock between January 3, 2001 and January 16, 2003. (See Order Preliminarily Approving Settlement and Providing for Notice, filed March 18, 2005, Ex A-1 at 1.)

In a letter dated April 22, 2005 and filed April 26, 2005, Malone objected to the settlement on the ground that Veritas options holders were being excluded from sharing in the settlement proceeds. Additionally, Malone objected to the amount of notice initially provided to the class members. On May 4, 2005, plaintiffs and defendants submitted an amended settlement, along with a proposal to continue the final fairness hearing from May 6, 2005 to July 8, 2005. On May 6, 2005, the Court ordered the parties to provide notice of the amended settlement to the class members, and continued the fairness hearing an additional three weeks, to July 29, 2005, to afford the class members sufficient time to review the amended settlement prior to the deadline for submitting objections thereto.

The amended settlement provides for distribution of $35 million to persons who purchased or acquired Veritas securities (including common stock, 5.25% convertible subordinated notes due 2004, 1.856% convertible subordinated notes due 2006, and options) between January 3, 2001 and January 16, 2003. (See Order Approving Revised Notice and Providing for Hearing Ex. A-1 (Revised Notice of Pendency and Proposed Settlement of Class Action), filed May 6, 2005, at 1.) Although the Court received a number of objections to the amount of the proposed attorneys' fees, Malone submitted the only objections to the manner in which the settlement proceeds were to be allocated among the various categories of class members.

In Malone's objections to the amended settlement, he challenged the following: (1) the provision for payment of settlement proceeds to shareholders who bought Veritas shares or notes after the beginning of the class period and who sold those shares or notes before Veritas disclosed its intent to review its accounting of the AOL transaction ("in-and-out traders"); (2) the imposition of a ceiling or "cap" of 2% of the net settlement fund on the claims of options traders; and (3) a plan of allocation of settlement proceeds that, Malone asserted, violated the requirements of the Private Securities Litigation Reform Act of 1995.

(See Malone objections, filed July 1, 2005, at 7; see also Malone objections, filed September 27, 2005.)

After holding a fairness hearing on July 29, 2005, the Court requested supplemental briefing on the issues raised by Malone. Thereafter, in an order filed November 15, 2005, the Court rejected all of Malone's objections and approved the amended settlement.

**DISCUSSION**

Malone seeks an award of $780,000 in fees and $19,087.50 in costs, based on "the effort expended and the benefits achieved for the class." (See Malone motion at 1.). Lead plaintiffs argue that Malone's motion should be denied both as untimely and on the merits.

**A. Timeliness**

Lead plaintiffs argue that Malone's motion should be denied as untimely, pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure. Rule 54(d)(2) provides, in relevant part:

> (A) Claims for attorneys' fees and related non-taxable expenses shall be made by motion . . . .
>
> (B) Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment[.]

See Fed. R. Civ. P. 54(d)(2).[1] Consistent therewith, the Civil Local Rules of this District provide: "Unless otherwise ordered by the Court after a stipulation to enlarge time under Civil L.R. 6-2 or a motion under Civil L.R. 6-3, motions for awards of attorney's fees by the Court must be served and filed within 14 days of entry of judgment by the District Court." See Civil L.R. 54-6(a).

In the instant action, judgment was entered November 15, 2005. Malone's motion was filed 29 days after entry of judgment, on December 14, 2005.

In his reply to lead plaintiffs' opposition, Malone argues that the judgment authorized him to file his fees motion after the 14-day deadline. Malone's argument that the judgment

---

[1] The Ninth Circuit has held the 14-day deadline is tolled "pending the outcome of post-trial motions under Rule 50 or Rule 59" because "those motions operate to suspend the finality of the district court's judgment." See Bailey v. County of Riverside, 414 F.3d 1023, 1025 (9th Cir. 2005). No such motion was filed in the instant case.

extended the deadline is unpersuasive. In particular, Malone points to the following language in the judgment: "Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees and expenses in the Litigation; and (d) all parties hereto for the purposes of construing, enforcing and administering the Stipulation" of settlement. (See Final Judgment and Order of Dismissal with Prejudice, filed Nov. 15, 2005, ¶ 13 (emphasis added).) Nothing in the cited language extends the deadline for filing a motion for attorneys' fees, however, and the one published case on which Malone relies, Fresh Kist Produce, L.L.C. v. Choi Corp., 362 F. Supp. 2d 118 (D.D.C. 2005), is distinguishable. In Fresh Kist, the district court had issued an order requiring the parties to follow a specific procedure for submitting requests for attorneys' fees. See id. at 120, 125. Although the plaintiff submitted a fee request more than 14 days after entry of judgment, the court found the request timely because the plaintiff had followed the procedure previously ordered by the court. See id. Here, by contrast, no procedure for seeking fees is set forth in the judgment, and there is no language even arguably extending the 14-day deadline for filing a motion for attorneys' fees.

Malone argues the judgment is at least ambiguous because the Court, given Rule 54(d)(2), had no need to expressly retain jurisdiction to hear fee motions filed within 14 days of entry of judgment. Because the judgment was drafted by lead plaintiffs' counsel, Malone reasons, the Court should construe the judgment against them and find the Court's retention of jurisdiction to apply to fee motions filed after the statutory deadline. This argument likewise is unpersuasive. Were the Court to accept Malone's argument, no motion for fees would be untimely, no matter how long after the judgment such motion was filed. Moreover, the clause in question is not ambiguous, as its inclusion has a purpose independent of that proposed by Malone, specifically, to complete the listing of matters over which the Court was retaining jurisdiction, irrespective of whether such retention was

provided for elsewhere as well.

Malone next argues, relying on Saudi Iron and Steel Co. v. Stemcor USA Inc., 1997 WL 790746 (S.D.N.Y. Dec. 23, 1997), that Rule 54(d)(2) is not applicable because the Court has already awarded fees to lead plaintiffs. Saudi Iron is distinguishable, however. In Saudi Iron, the district court found Rule 54(d)(2) inapplicable because the court had already issued a judgment awarding fees and costs generally to the plaintiff, and the assertedly untimely "schedule" of attorneys' fees addressed only the amount of fees to be awarded. See id. at *1-2. Here, the Court did not include in the judgment any award of fees to Malone.

Finally, Malone argues, the Court should find his failure to submit a timely motion for fees was due to "excusable neglect." In particular, Malone states:

> [T]his case was in a strange posture. The judgment was entered by plaintiffs and was in their favor. The rule seems to contemplate that they as the prevailing party would apply for attorneys' fees. Our possible appeal, if successful, would allow us to apply for additional attorneys' fees because of the additional benefit achieved. To make two applications for attorneys' fees, each of which would necessarily impact upon the other, troubled us: it seemed to involve a duplication and waste of time for everyone including the Court. We believed that a combination of the reservation of jurisdiction by the Court as well as the possibility of an application for additional attorneys' fees, made it advisable to postpone our fee application. Although ultimately we decided to make our application and run the risk of duplication, we submit that our concern had substance and indeed was reasonable so that any possible neglect is excusable.

(See Reply at 4.)

Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, when "an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." See Fed. R. Civ. P. 6(b). In determining whether neglect is excusable, courts consider "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." See Bateman v. United States Postal Service, 231 F.3d 1220, 1223-24 (9th Cir. 2000). The Ninth Circuit, while recognizing the

14-day deadline provided in Rule 54(d)(2) is "not jurisdictional," has held failure to comply with that deadline "should be sufficient reason to deny the fee motion, absent some compelling showing of good cause." See Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 889-90 (9th Cir. 2000).

Here, the Court first notes that Malone has submitted no evidence of the asserted reasons for his failure to timely file his motion for fees. The above-referenced circumstances, included in a footnote to the reply, are not set forth under penalty of perjury. Accordingly, for that reason alone, Malone has failed to demonstrate "excusable neglect" amounting to a "compelling showing of good cause" for his failure to timely file his motion for fees.

Moreover, even if the Court were to consider the reply as evidence, Malone has not demonstrated "excusable neglect" amounting to a "compelling showing of good cause" for his failure to timely file his motion for fees. Although Malone was only fifteen days late in filing his motion, and plaintiffs have not shown they were prejudiced thereby, the proffered reason for the delay does not demonstrate neglect, but, rather, a deliberate decision to "postpone" the filing of the application. (See Reply at 4); see also, e.g., Allen v. Murph, 194 F.3d 722, 723-24 (6th Cir. 1999) (finding no excusable neglect where attorney declined to file timely motion for fees after being requested to do so by client); see also African American Voting Rights Legal Defense Fund, Inc. v. Villa, 54 F.3d 1345, 1350 (8th Cir. 1995) (affirming district court's denial of request to submit untimely opposition to motion for summary judgment; noting "tactical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)").

Accordingly, the Court finds Malone's motion is untimely and will DENY the motion.

**B. Merits**

Even assuming, arguendo, the instant motion was timely filed, Malone has not demonstrated his entitlement to fees in the requested amount, specifically, $780,000.

"[A]n award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund – whether they tended to create, increase,

protect or preserve the fund." See Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994); see also Wininger v. SI Management L.P., 301 F.3d 1115, 1120 (9th Cir. 2002) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). A party objecting to a proposed class action settlement may obtain an award of fees where he "substantially enhanced the benefits to the class under the settlement." See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir. 2002).

Malone argues that his objections to the proposed settlement conferred a benefit on the class by ensuring that investors in Veritas options, 5.25% notes, and 1.856% notes were included in the plan of allocation. As noted, investors in options and notes were not included in the initial plan of allocation submitted to the Court. Malone argues that because the amended settlement provides for a maximum distribution to options holders in the amount of 2% of the $35 million settlement fund, his objection created a benefit of $700,000 to options holders. Malone further argues that because lead plaintiffs' expert, Bjorn I. Steinholt, attested that the maximum amount of damages suffered by the note holders was approximately $26 million, and that the total settlement amount was approximately 20 percent of the damages suffered by all class members, Malone's objection created a benefit to the note holders in the amount of $5.2 million. (See Steinholt Decl., filed August 26, 2005, ¶ 5.) Thus, according to Malone, his objection created a total benefit of $5.9 million to class members who invested in Veritas options and notes. Accordingly, the Court agrees with Malone that his objection substantially benefited the class.

Under the common fund doctrine, the Court may award fees under either the percentage-of-the fund method or the lodestar method, and "no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other." See In re Washington Public Power Supply System Securities Litigation, 19 F.3d 1291, 1296 (9th Cir. 1994). "As always, when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of

common funds be 'reasonable under the circumstances.'" Id. (quoting Florida v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990)).

Malone argues that the Court should award fees under the percentage-of-the-fund method. He points out that the Court awarded fees in the amount of $6 million to lead plaintiffs' counsel, which constitutes 17.14% of the $35 million settlement fund. Although 17.14% of the $5.9 million benefit his objection conferred on the class would result in an award of $1,011,260, Malone is not seeking an award in that amount, which he concedes would be excessive. Rather, he requests a fee representing 13% of the $6 million fee awarded to lead plaintiffs' counsel, resulting in an award of $780,000.

Although Malone objected to the settlement both as initially proposed and as amended thereafter, only Malone's initial objection resulted in any benefit to the class. The Court overruled all of his objections to the amended settlement. Given the minimal number of hours Malone's counsel spent in preparing his initial objection,[2] an award in the amount calculated by Malone's percentage method would result in an unwarranted windfall. See Fischel v. Equitable Life Assurance Society of the United States, 307 F.3d 997, 1007 (9th Cir. 2002) (affirming district court's use of lodestar method; noting case had settled early in litigation and use of percentage method to calculate fee "might very well have been a 'windfall'"). Under such circumstances, the lodestar method would provide a more reasonable award. See id. ("There is a 'strong presumption' that the lodestar figure represents a reasonable fee."). Further, for purposes of calculating the lodestar, the time expended on matters other than the initial objection ordinarily would be excluded. See Wininger v. SI Management, L.P., 301 F.3d 1115, 1125 (9th Cir. 2002) (approving district court's decision to exclude from lodestar calculation all time spent by objectors' counsel "in

[2] Malone's counsel has submitted time records demonstrating counsel spent a total of 23.9 hours preparing Malone's initial objection. (See Rabin Decl., filed Feb. 8, 2006, Ex. 2.) In particular, Stephen I. Rabin spent 7.6 hours at an hourly rate of $690; Joseph P. Garland spent 3.2 hours at an hourly rate of $550; and Joseph McBride spent 13.1 hours at an hourly rate of $450. (See id. Ex. 2; see also Rabin Decl., filed Dec. 14, 2005, ¶ 2.) Thus, the total amount of claimed fees attributable to Malone's successful objection is $12,899.

unsuccessful efforts unrelated to their success challenging Plaintiffs' counsels' fee request").

As noted, however, Malone's motion for fees is untimely. Consequently, the Court need not determine the precise amount of fees to which Malone otherwise would have been entitled.

## CONCLUSION

For the reasons set forth above, Malone's motion is hereby DENIED.

This order terminates Docket No. 248.

**IT IS SO ORDERED.**

Dated: February 24, 2006

MAXINE M. CHESNEY
United States District Judge